IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SPENCER MARTIN, #B78935, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 19-cv-00503-JPG |
| | ) |
| DR. SIDDIQUI, | ) |
| NURSE PRACTITIONER ZIMMERMAN,[1] | ) |
| and WEXFORD HEALTH SOURCE, | ) |
| INC., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

**GILBERT, District Judge:**

This matter is before the Court for consideration of Defendants' Motion for Summary Judgment on Exhaustion of Administrative Remedies. (Doc. 27). The Court held an evidentiary hearing to decide disputed issues of material fact. *See Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). For the reasons set forth below, the Court finds that Plaintiff failed to properly exhaust his available remedies before filing suit as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Accordingly, the Motion for Summary Judgment filed by Defendants Siddiqui, Zimmer, and Wexford Health Source, Inc. ("Wexford") shall be **GRANTED**, and this action shall be **DISMISSED without prejudice**.

### BACKGROUND

Plaintiff Spencer Martin is an inmate in the Illinois Department of Corrections ("IDOC") and is incarcerated at Menard Correctional Center ("Menard"). His claims arise from the denial

---

[1] Defendant has identified herself as Mary Jo Zimmer, not "Zimmerman." Accordingly, the Clerk's Office shall be directed to substitute "Mary Jo Zimmer" in place of Nurse Practitioner Zimmer as a defendant in CM/ECF. The Court will refer to this individual throughout this Order as "Zimmer."

1

of medical care for shoulder and neck pain at Menard. Beginning in June 2017, Plaintiff repeatedly complained of ongoing pain to Dr. Siddiqui and Nurse Practitioner Zimmer. Although he was initially prescribed ibuprofen, Plaintiff reported that it was ineffective, and he was unable to perform his daily activities. In June 2018, Dr. Siddiqui prescribed him Voltaren. When Plaintiff complained of similar results, Dr. Siddiqui informed him that nothing more could be done.

Beginning in October 2018, Plaintiff was sent for several MRIs. Dr. Siddiqui and Nurse Practitioner Zimmer told Plaintiff that surgery would be required. However, he was not actually scheduled for surgery until May 4, 2019. In the meantime, he was denied prescription pain medication.

In the Complaint, Plaintiff asserted an Eighth Amendment claim against Dr. Siddiqui, Nurse Practitioner Zimmer, and Wexford for deliberate indifference to his serious medical condition. He claimed that both individual medical providers delayed effective treatment of his neck and shoulder pain. He blamed Wexford for a "pattern and practice" of delaying needed surgeries to achieve "Wexford's cost cutting measures." On September 24, 2019, the Court screened this matter and allowed Plaintiff to proceed with the Eighth Amendment deliberate indifference claim against all three defendants. (Doc. 6).

Defendants filed for summary judgment based on Plaintiff's failure to properly exhaust all available administrative remedies before filing suit. (Docs. 27 and 28). They point to three grievances he filed in connection with this matter: (a) Grievance #320-8-18 dated August 14, 2018 ("August grievance") (Doc. 1, pp. 14-17); (b) Grievance #55-11-18 dated October 22, 2018 ("October grievance") (*Id*. at 20-22); and (c) Grievance #340-21-18 dated December 17, 2018 ("December grievance") (*Id*. at 23-24). Defendants argue that Plaintiff had access to the prison's grievance process but failed to properly exhaust. (Doc. 28, ¶ 5). He did not identify Wexford in

any of the three grievances, and he did not identify Zimmer in the August or October grievances. (*Id*. at ¶ 2). In addition, he failed to complete each of the three steps required to exhaust the August, October, and December grievances, by skipping the second level of the grievance process for the August grievance and abandoning the grievance process after the first level for the October and December grievances. (*Id*. at ¶¶ 3-4).

Plaintiff counters that he filed "many" grievances, although he only addressed the August and December grievances in his Response. (Doc. 33, ¶¶ 2-3). Plaintiff explains that he placed each grievance in the facility's grievance box. (*Id*.). Once Plaintiff received the counselor's and/or health care unit's response, he returned the grievance to the grievance box. (*Id*.). In this manner, the grievance officer must have handled each grievance two or three times without responding. (*Id*. at ¶ 5). And, after waiting at least sixty days for a response from the grievance officer and/or the warden, Plaintiff filed an appeal of each grievance with the Administrative Review Board ("ARB"). (*Id*.).

### PAVEY HEARING

On February 23, 2021, the Court held a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). Plaintiff testified that he filed grievances in August, October, and December. He admittedly failed to mention Wexford in any of them, and he did not mention Zimmer in the August or October grievances. Plaintiff placed each grievance in the grievance box. When he received a response from a counselor (*i.e.*, Bradley) and/or member of the health care unit's staff, he returned each grievance to the grievance box. He received no response from a grievance officer or the warden. When he appealed the August grievance to the Administrative Review Board less than thirty days after receiving a counselor's response, the appeal was rejected as improperly filed, and he took no steps to resubmit it properly. He received the October and December grievance

3

responses in February 2019 and was unclear whether he appealed either grievance. Plaintiff testified that he made no copies of his grievances or responses.

Kelly Pierce (correction clerk) and Tyler Bradley (correction counselor) testified on behalf of Defendants. They explained that Plaintiff filed each of the three grievances as non-emergencies in the grievance box. A three-step grievance process required Plaintiff to submit his initial grievance to a counselor (Level 1), his initial appeal with a grievance officer who would forward it to the warden for response (Level 2), and his final appeal with the Administrative Review Board ("ARB") (Level 3). He could initiate the grievance process by placing a grievance in the grievance box, and the grievance office would then log each grievance, assign it a number, issue a receipt, and track it in the "CHAMPS" system. According to the testimony, Plaintiff skipped Level 2 of the grievance process for each of his grievances, and he abandoned the process after Level 1 for the October and December grievances. The counselor and health care unit issued responses to each grievance after a reasonable time period, and Plaintiff filed no request for the status of any grievance responses or appeals.

APPLICABLE LEGAL STANDARDS

A.   **Summary Judgment**

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the burden of establishing that no material facts are genuinely disputed. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party. *Id*. On summary judgment, the district court's role is generally not to weigh evidence or judge witness credibility. When deciding a motion for summary

judgment on the issue of exhaustion, however, the Seventh Circuit explains that a different standard applies. *Pavey v. Conley*, 544 F.3d at 739-41. The Seventh Circuit in *Pavey* held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are to be determined by the judge, not a jury. *Pavey*, 544 at 740-41. A summary judgment motion on exhaustion grounds typically requires a hearing to decide any contested issues regarding exhaustion, and a judge may make limited findings at that time. *Id*. at 742.

**B.      Exhaustion of Administrative Remedies**

Lawsuits filed by inmates are governed by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). The PLRA states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. (emphasis added). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). The Supreme Court has interpreted the PLRA to require "proper exhaustion" before filing suit. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Perez v. Wis. Dept. of Corr.*,182 F.3d 532, 534-535 (7th Cir. 1999) (stating that § 1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In other words, an inmate must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. Strict compliance with the prison's grievance process is required. *Locket v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019).

C.  **Grievance Procedure**

In order to properly exhaust his claims, an IDOC inmate is required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders. 20 ILL. ADMIN. CODE § 504.800 *et seq*. The standard 3-step grievance process applies to grievances submitted in the normal course and not as emergencies. *See* 20 ILL. ADMIN. CODE § 504.810(a); Doc. 38 (Ex. E). All three grievances at issue were submitted as non-emergencies.

The first level requires an inmate to file a grievance with a counselor or grievance officer at the institutional level within sixty days of the incident giving rise to the complaint. *See* 20 ILL. ADMIN. CODE § 504.810(a); Doc. 38 (Ex. E). Initial grievances like the ones at issue should be addressed to the grievance counselor. *Id*. The original grievance is filed by placing it in the living unit mailbox or other designated repository. *Id*. Grievances are reviewed and a written response provided to the offender. 20 ILL. ADMIN. CODE § 504.830(a).

At the second level, Plaintiff appeals the grievance to a grievance officer, who reviews the matter and sets forth his or her findings in a written report and recommendation to the Chief Administrative Officer ("CAO") within two months of receiving the grievance. 20 ILL. ADMIN. CODE § 504.830(a),(e). Upon review of these findings and recommendation, the CAO shall advise the inmate or his or her decision in writing. *Id*.

If the inmate wishes to appeal the CAO's decision, he should complete the third level of the grievance process. 20 ILL. ADMIN. CODE § 504.850. To do so, he must file a written appeal to the IDOC Director by submitting the appeal, along with a copy of the grievance officer's report and CAO's decision, to the ARB within thirty days of the warden's decision. 20 ILL. ADMIN. CODE § 504.850(a). The ARB then submits a written report and recommendation to the Director, who

makes a final determination about the grievance within six months after receipt of the appealed grievance.[2]  20 ILL. ADMIN. CODE § 504.850(d),(e).

### DISCUSSION

Defendants met their burden for summary judgment on the Eighth Amendment claim against all three defendants. This matter involves three grievances dated August 14, 2018 ("August grievance") (Doc. 1, pp. 14-17), October 22, 2018 ("October grievance") (*Id*. at 20-22), and December 17, 2018 ("December grievance") (*Id*. at 23-24). No grievances were properly exhausted.

The Court finds that all three are insufficient to support the claim against Wexford, and two are inadequate to support the claim against Zimmer. According to the IDOC regulations, grievances "shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c). If the individual who forms the basis of the complaint is unknown, an offender "must include as much descriptive information about the individual as possible." *Id*.

Wexford is not mentioned by name or in generic terms in any of the grievances. Plaintiff does not set forth enough information to put the prison or the private medical corporation on notice of any complaints against Wexford. He mentions no policy, custom, or practice attributable to the

---

[2] In the case of an emergency, the inmate may request that a grievance be handled on an emergency basis by forwarding it directly to the Chief Administrative Officer ("CAO") of the institution. 20 ILL. ADMIN. CODE § 504.840. If the grievance presents a situation posing imminent personal injury or serious physical harm to the inmate, the CAO shall expedite the handling of the grievance on an emergency basis. 20 ILL. ADMIN. CODE § 504.840(a). If the CAO determines that the grievances presents a non-emergency, as in this case, he or she shall notify the offender "in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 ILL. ADMIN. CODE § 504.840(c). The ARB shall expedite this process, in cases where an inmate is appealing a grievance that the CAO deemed to be an emergency. 20 ILL. ADMIN. CODE § 504.850(f). Plaintiff did not use this procedure.

medical corporation that caused a violation of his constitutional rights. The grievances are insufficient as to Wexford, and this defendant shall be dismissed with prejudice from this action.

Zimmer is not mentioned in the August or October grievances. Plaintiff generically refers to a "nurse" in the August grievance (Doc. 1, p. 16) and a "nurse practitioner" in his October grievance (*Id*. at 20). However, he goes on to state that he saw six or seven nurses and two nurse practitioners. (*See id*. at 20-21). It is therefore unclear whether his reference to "nurse" in the August grievance or "nurse practitioner" in the October grievance pertains to Zimmer. The Court therefore finds that Plaintiff has failed to exhaust his administrative remedies as to Zimmer in the August and October grievances. And, as explained in more detail below, Plaintiff cannot proceed with his claims against Zimmer (or anyone else) based on the December grievance.

The Court further finds Plaintiff's vague testimony about steps he took to exhaust each grievance utterly lacking in credibility. Plaintiff testified that he made no copies of his grievances or responses because he simply kept filing them in the grievance box in an attempt to exhaust. However, Plaintiff attached copies of each one to his Complaint. Although he complained of receiving no response to any appeals from a grievance officer, he admitted making no inquiry into the status of his appeals. He offered no explanation for abandoning the grievance process when the ARB returned his August grievance to him as improperly filed, and he made no plausible argument that he exhausted the October or December grievances.

The Court finds Pierce and Bradley's testimony credible. Both support Defendants' position that Plaintiff skipped the second level of the grievance process for the August grievance by failing to appeal the counselor's response to the grievance officer. 20 ILL. ADMIN. CODE § 504.830(a),(e). In this case, Plaintiff instead appealed the counselor's decision directly to the

ARB.  When the grievance was returned for the procedural defect (skipping the second level) with no decision on the merits, Plaintiff took no further action to resubmit it properly.

The Court finds that Plaintiff failed to complete the second or third levels of the grievance process for the October and December grievances.  As such, he failed to properly exhaust his available administrative remedies for any of these grievance filed in connection with his Eighth Amendment claim.  Defendants are entitled to summary judgment.

## DISPOSITION

The Clerk's Office is **DIRECTED** to substitute Mary Jo Zimmer in place of Nurse Practitioner Zimmerman as a defendant in CM/ECF.

For the above reasons, Defendants Siddiqui, Zimmer, and Wexford's Motion for Summary Judgment (Doc. 27) is **GRANTED**, and this action is **DISMISSED without prejudice**.

If Plaintiff wishes to appeal this Order, he may file a notice of appeal with this Court within thirty days of the entry of judgment.  FED. R. APP. 4(A)(4).  If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal.  *See* FED. R. APP. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien*, 133 F.3d at 467.  Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike."  A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline.  FED. R. APP. P. 4(a)(4).  A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of judgment, and this 28-day deadline cannot be extended.

The Clerk's Office is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:  3/1/2021**

s/J. Phil Gilbert
J. PHIL GILBERT
**United States District Judge**